IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

BRIAN ATKINS,

        Plaintiff,

V.                                                  CIVIL ACTION NO. 3:04-1217

JO ANNE BARNHART,
Commissioner of Social Security,

        Defendant.

**<u>FINDINGS AND RECOMMENDATION</u>**

In this action, filed under the provisions of 42 U.S.C. §§405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed his applications on March 13, 2003, alleging disability commencing October 26, 2001, as a consequence of an adjustment disorder, anxiety, depression, wrist problems, degenerative disc disease, high blood pressure and diabetes. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-one years of age and had obtained a high school education. His past relevant employment experience consisted of work as a police officer, truck driver, painter and direct care autism worker. In his decision, the administrative law judge determined that plaintiff suffers from "generalized anxiety disorder with depression, degenerative joint disease of the left shoulder and right wrist, diabetes with possible neuropathy in the fingers, and hypertension," impairments which he considered severe. Though concluding that plaintiff was unable to perform his past work,[1] the administrative law judge determined that he had the residual functional capacity for a limited range of sedentary level work. On the basis of this finding, and relying on Rule 201.28 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

Review of the record reveals deficiencies which will require remand for further proceedings. The medical evidence reflects that, physically, plaintiff has insulin dependent diabetes, with uncontrolled blood sugar levels, and hypertension. He also experiences some problems with his right wrist and was observed to be wearing a splint during many of his evaluations. Without the splint, evaluation reflected tenderness in the wrist and restricted range of motion. The left shoulder and left biceps muscle have also been found to be tender, with the biceps muscle observed to be misshapen. The administrative law judge found that all of these conditions constituted "severe" impairments and factored them into his residual functional capacity assessment by finding that plaintiff could perform only sedentary work which did not involve overhead reaching with the left

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1.

upper extremity or repetitive use of the right wrist. These limitations, however, are clearly more significant than those in the hypothetical question given to the vocational expert. The administrative law judge asked this witness to consider, exertionally, a combination of sedentary and light work with a ten pound weight limit on the "lift, carry." He added that reaching, handling and fingering could be done frequently but not constantly or repetitively such as required in assembly line work. These assumptions are clearly in conflict with his finding of no overhead reaching with the left upper extremity and limitation to only sedentary work, and, as a consequence, the testimony from the vocational expert cannot provide substantial support for the administrative law judge's finding of other work plaintiff could perform.[3]

Plaintiff's mental impairments also impose significant limitations, principally in the area of social functioning. On January 3, 2003, plaintiff sought treatment at the Veteran's Administration Medical Center ("VAMC") for mood problems and difficulty handling stress. He was given a diagnosis of adjustment disorder with mixed features. Subsequent reports revealed more about his symptoms, which included irritability, depressed mood several days a week, anxiety and withdrawing from others. He also reported a history of problems getting along with employers and co-workers. Mental status evaluation on February 5, 2003, revealed an irritable attitude and mood, constricted affect and persecutorial ideation. The examiner assigned a global assessment of functioning ("GAF") of fifty-three, consistent with moderate symptoms or moderate impairment in social or occupational functioning.[4] Plaintiff received therapy from a social worker and was also

---

[3] See, Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989); O'Leary v. Schweiker, 710 F.2d 1334, 1343 (8th Cir. 1983); Hicks v. Califano, 600 F.2d 1048, 1051 (4th Cir. 1979).

[4] See, Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., American Psychiatric Association, 1994 at 32.

prescribed medication by a psychiatrist and a clinical pharmacist assigned to the psychiatric service. The medications were only somewhat effective, however.

Brian P. Bailey, M.A., performed a psychological evaluation for the Commissioner on May 6, 2003. He related that, while plaintiff was cooperative, he remained "indignant" throughout the evaluation. His mood was angry and he showed minimal humor and cursed "freely" at times. Ideas of persecution were again apparent. Memory, concentration and persistence were considered within normal limits, while pace and social functioning during the evaluation were felt to be "mildly deficient." The diagnosis was major depressive disorder, single episode, severe, with psychotic features, chronic, and anxiety disorder NOS.

While Mr. Bailey was apparently not requested to assess plaintiff's mental residual functional capacity, a state agency psychologist who reviewed the record up to May 23, 2003, determined that plaintiff would be moderately limited in his abilities to work in coordination with others without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers without distracting them or exhibiting behavioral extremes; and, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.

Following a compensation and pension exam performed by personnel at the VAMC, plaintiff was diagnosed with generalized anxiety disorder and dysthymic disorder and was granted seventy percent disability by the Veteran's Administration, fifty percent of which was attributable to mental impairments.

On March 29, 2004, Lisa Tate, M.A., performed a psychological evaluation of plaintiff at the Commissioner's request. She noted an irritable mood, moderately deficient recent

4

memory, a verbal score of ninety-two, performance of seventy-six and full scale score of eighty-four on I.Q. testing and a score on the Beck Depression Inventory that was consistent with "extremely severe depression." Ms. Tate diagnosed major depressive disorder with anxious features. She did assess plaintiff's mental residual functional capacity, finding moderate limitations of his abilities to understand, remember and carry out detailed instructions; interact appropriately with the public, with supervisors and with co-workers; and, respond appropriately to both work pressures and to changes in a usual or routine work setting.

      The administrative law judge, after considering the various opinions as to plaintiff's mental functioning, concluded that greater weight should be given to the evidence from the treating and examining sources. Rather than adopting the specific findings from Ms. Tate as to the degree of limitation plaintiff experienced in each work category related to social functioning, however, the administrative law judge simply concluded that plaintiff could perform simple, routine job tasks not requiring sustained concentration or attention or more than minimal interaction with others. In addition to being less specific than the limitations contained in the assessment of Ms. Tate, and that of the state agency psychologist, which are fairly consistent,[5] the administrative law judge's assessment makes no mention of Ms. Tate's limitations regarding dealing with work pressures and changes in the work setting, limitations which were also stressed by plaintiff's treating sources at the VAMC. The administrative law judge offered no explanation for not adopting the specific limitations or for only adopting some of them. While resolution of conflicts in the evidence is

---

[5] It is noted that when the vocational expert was asked to specifically consider the limitations assessed by the state agency psychologist, this witness was of the opinion that plaintiff would not be retained in any job. The administrative law judge's findings and the accurate reflection of those findings in the hypothetical question(s) to the vocational expert are thus crucial to a proper determination in this case.

within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), nevertheless, before this Court can conduct a reasoned review of the decision, the Commissioner must "explicitly indicate 'the weight given to all relevant evidence,'" articulating "the reasons underlying his actions... ." Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987).  Here, as noted, the administrative law judge has simply stated what he apparently considers to be summary type conclusions as to plaintiff's mental functioning without explaining his reasons for not adopting the more specific limitations contained in the examining psychologist's assessment or that from the state agency reviewing psychologist.

It is also noted that plaintiff submitted to the Appeals Council a July 29, 2004 letter signed by Masum Ahmed, M.D., and Zandra King, M.S.W., relative to his mental functioning.  The two report that plaintiff's symptoms are partially controlled with medication but that he has poor coping and stress management abilities and, under pressure, starts to exhibit classic symptoms of generalized anxiety disorder and dysthymia.  The symptoms, which include excessive worrying, fidgeting and restlessness, lead to problems with supervisors and fellow employees. Dr. Ahmed and Ms. King characterized plaintiff's condition as "very fragile" with a poor prognosis.  While the Appeals Council indicated it considered this additional evidence, it simply stated it did not provide a basis for changing the administrative law judge's decision.  On remand, the Commissioner obviously should consider this document in reassessing plaintiff's mental residual functional capacity.

## **RECOMMENDATION**

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that this case be remanded to the Commissioner for further proceedings consistent with these Findings and Recommendation.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

DATED: July 17, 2006

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE